Ralf SIEGEMUND, Special Adminis-
trator for the Estate of Joan L.
Siegemund, et al., Plaintiffs

v.

Peter SHAPLAND, et al., Defendants

No. CIV.01–277–P–H.

United States District Court,
D. Maine.

Aug. 17, 2004.

Thomas F. Hallett, Esq., Portland, ME, for Ralph Siegemund, Special Administrator for the Estate of Joan L. Siegemund, Ralf Siegemund, Stephan Siegemund, Karen Siegemund, plaintiffs.

John S. Whitman, Esq., Richardson, Whitman, Large & Badger, Portland, ME, for Peter Shapland, Peabody & Arnold LLP, defendants.

## DECISION AND ORDER ON PLAINTIFFS' MOTION TO AMEND JUDGMENT

HORNBY, District Judge.

The plaintiffs'[1] motion to amend judgment is DENIED.

Siegemund argues that expert testimony is not required to establish whether a reasonable fiduciary, here the personal representative of Rose Winston's estate, should have pursued a claim against Nagel, the guardian of Rose Winston's person while she was alive.[2] According to Siegemund "[t]he jury is in the best position to determine the reasonableness of [personal rep-

1. At the time that this motion was filed, the plaintiff was Ralf Siegemund, on behalf of the estate of his late wife, Joan Siegemund. Stephan Siegemund and Karen Siegemund, Ralf and Joan Siegemund's children, have since been joined as the real parties in interest. For clarity, I will refer to the plaintiffs collectively as "Siegemund."

2. I pass the fact that it was Siegemund who hired an expert on this issue, apparently wanting to argue to the jury that Shapland's profession as an attorney affects the analysis. ("[W]here a personal representative has '... special skills' ... he is under a duty to use those skills." Opp'n Mem. at 45 (citing 18–A M.R.S.A. §§ 3–302(a), 3–703)). Siegemund now claims that "this Court" noted in its June 14, 2004, decision that "no particular expertise is needed in determining whether to bring a lawsuit." Mot. at 2. I see nothing in my decision to that effect.

resentative] Shapland's actions." Mot. at 2. As I explained in my June 14, 2004, order, a jury certainly can be asked to determine whether a lawsuit against guardian Nagel would have been successful and, if so, what damages guardian Nagel caused. In other words, the "case within the case" is for the jury to resolve. Siegemund is just wrong, however, in believing that once the jury decides in 2004 or 2005 that Shapland would have recovered damages in a lawsuit against Nagel, the jury has enough to decide whether Shapland as a reasonable fiduciary breached his fiduciary duty in deciding not to sue in 1993, when he was appointed personal representative. In order to recover against Shapland, Siegemund must also persuade a jury that a reasonable fiduciary, standing in personal representative Shapland's shoes and knowing what Shapland knew at the time, would have pursued the lawsuit.

It is true, as Siegemund points out, that laypersons, such as family members, often act as personal representatives. And perhaps the judge can instruct the jury on the governing standard of care for a personal representative without the assistance of expert testimony on the topic. Nevertheless, expert testimony is required to inform the jury of the advantages and risks of a lawsuit in 1993 and to inform the jury what a properly advised fiduciary would believe such a lawsuit would recover and at what expense and delay. Siegemund did offer some expert testimony on this point. At his deposition, Attorney Calvin True testified that personal representatives have a duty to bring a lawsuit if the suit will more likely than not result in a net monetary gain to the estate. But there was no evidence in the summary judgment record from which True, or a jury for that matter, could find that Shapland should have concluded that a lawsuit against Nagel *would* have resulted in a net monetary gain to the estate. There was no evidence of what value a reasonable fiduciary would have placed on the lawsuit and no estimate of what it would have cost the estate to bring such a suit or to what extent bringing the suit would have delayed distribution under the Will.[3]

In the reply memorandum, Siegemund says that at the end of the trial in this case, the jury "will know how much money was in the estate," "will know that after disbursements were made $220,000 still remains in the estate," "will know that over $250,000 in fees were billed by Shapland and his firm for administrative fees," and "will know that Shapland never sought to retain a contingency fee attorney." Reply Mem. at 2. These "facts" may be relevant to whether a reasonable fiduciary would have sued. They were not, however, in the record when I granted summary judgment on this claim, and alone they would not be enough to prevent judgment as a matter of law on this claim for the defendant at trial. I did not rule against Siegemund on this claim for failure to present evidence of improper fiduciary conduct, see Order at 16, 18 (finding "a genuine issue of material fact whether Shapland's decision not to sue the guardians constituted 'willful default' under the provisions of the Will"; "allegations pres-

---

3. As I noted in the June 14, 2004, decision, valuing the potential recovery on a claim against Nagel would have been difficult since the claim was based, in large part, upon emotional distress that Nagel allegedly inflicted upon Rose Winston, who was suffering from dementia from the day that Nagel was appointed guardian until the day that she died. 324 F.Supp.2d at 186–87. Complicating matters further are the decisions of Maine and Massachusetts courts that Shapland claims may have had collateral estoppel effect, barring any lawsuit against Nagel. The presence of difficult legal issues like these reinforces the need for expert testimony.

ent jury questions about the guardians' liability"); instead, I ruled adversely because Siegemund failed to present evidence that "a reasonable and prudent fiduciary would have seen value in a lawsuit against Nagel." Order at 21. The jury's resolution of the case within a case now is not a proxy for evidence of the risk/value assessment of a reasonable fiduciary at the time Shapland decided not to sue Nagel.

Because there is no record evidence from which the jury could conclude that a reasonable fiduciary would have sued Nagel, Shapland is entitled to summary judgment on this claim. The plaintiffs' motion to amend is DENIED.

So ORDERED.